**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| JACLYN CRESCENTE, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br> v.<br><br>STELLARONE CORPORATION, O.R. BARHAM JR., RAYMOND D. SMOOT JR., H. WAYNE PARRISH, BEVERLEY E. DALTON, GLEN C. COMBS, STEVEN D. IRVIN, LEE S. BAKER, JAN S. HOOVER, CHARLES W. STEGER, CHRISTOPHER M. HALLBERG, GREGORY L. FISHER, KEITH L. WAMPLER, ALAN W. MYERS, STELLARONE BANK, and UNION FIRST MARKET BANKSHARES CORPORATION,<br><br>        Defendants. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiff Jaclyn Crescente ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this shareholder class action individually, and on behalf of the holders of the common shares of StellarOne Corporation ("StellarOne" or the "Company") and against the directors of StellarOne, one of whom is an officer, and other persons and entities (collectively, "Defendants") involved in a proposed transaction through which StellarOne will be merged with and into Union First Market Bankshares Corporation ("Union First"), pursuant to which all the outstanding shares of StellarOne will be acquired in a stock-for-stock transaction for inadequate consideration (the "Proposed Transaction").

2.     On June 10, 2013, StellarOne and Union First issued a press release announcing that they had entered into a definitive Agreement and Plan of Reorganization (the "Merger Agreement") for Union First to acquire StellarOne in an all-stock merger with a total equity value of approximately $19.50 per share or $445.1 million.  Under the terms of the Proposed Transaction, StellarOne shareholders will receive 0.9739 common shares of Union First for each share of StellarOne common stock they own (the "Exchange Ratio"), upon consummation of the Merger Agreement.

3.     As described below, both the value to StellarOne shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and all other public shareholders of the Company.

4.     The Individual Defendants', as defined herein, conduct constitutes a breach of their fiduciary duties owed to StellarOne's public shareholders, and a violation of applicable legal standards governing the Individual Defendants' conduct.

5.     In facilitating the Proposed Transaction of StellarOne for inadequate consideration and through a flawed sales process, each of the Defendants breached and/or aided the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.  The Individual Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making successful competing offers for the Company.  For example, the Board of Directors (the "Board") agreed to: (i) a no-solicitation provision that requires the Company to terminate any ongoing discussions with other potential acquirers and from pursuing any alternative to the Proposed Transaction; (ii) a matching rights provision that allows Union

First five (5) business days to match any competing proposal in the unlikely event that one emerges; and (iii) a provision that requires the Company to pay Union First a termination fee of $21,800,000 in order to enter into a transaction with a superior bidder.  These provisions conjunctively and improperly restrain the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Transaction.

6.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

## JURISDICTION AND VENUE

7.      Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, fair dealing and due care to Plaintiff and the other members of the Class (defined below).  They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.   The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $445.1 million, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the Defendants, including StellarOne, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in substantial part in this District.  Finally, the Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of StellarOne shares and has held such shares since prior to the wrongs complained of herein.  Plaintiff is a citizen of the State of New York.

11.     StellarOne is a Virginia corporation with its principal executive offices located at 590 Peter Jefferson Parkway, Suite 250, Charlottesville, Virginia 22911.  StellarOne is a bank holding company.  StellarOne Bank, a wholly-owned subsidiary of StellarOne, offers services provided by full-service banks, including individual and commercial demand and time deposit accounts, commercial and consumer loans, residential mortgages, credit card services and deposit services.  StellarOne common shares trade on the NASDAQ Exchange under the ticker symbol "STEL."

12.     Defendant O.R. Barham Jr. ("Barham") has served as a director to the Company's Board since 1996.  Barham is the President and Chief Executive Officer ("CEO") of StellarOne and a member of the Company's Executive Committee.   Barham is a citizen of the Commonwealth of Virginia.

13.     Defendant Raymond D. Smoot Jr. ("Smoot") has served as Chairman of the Board since 2010, has served as a director since 1998 and serves as Chairman of the Company's Executive Committee.  Smoot is a citizen of the Commonwealth of Virginia.

14.     Defendant H. Wayne Parrish ("Parrish") has served as a director to the Company's Board since 1988 and is a member of the Company's Personnel & Compensation Committee.  Parrish is a citizen of the Commonwealth of Virginia.

4

15.     Defendant Beverley E. Dalton ("Dalton") has served as a director to the Company's Board since 2002 and is a member of the Company's Executive and Personnel & Compensation Committees.  Dalton is a citizen of the Commonwealth of Virginia.

16.     Defendant Glen C. Combs ("Combs") has served as a director to the Company's Board since 1987, is Chairman of the Company's Personnel & Compensation Committee and a member of the Company's Executive and Governance & Nominating Committees.  Combs is a citizen of the Commonwealth of Virginia.

17.     Defendant Steven D. Irvin ("Irvin") has served as a director to the Company's Board since 1999 and is a member of the Company's Audit & Compliance and Personnel & Compensation Committees.  Irvin is a citizen of the Commonwealth of Virginia.

18.     Defendant Lee S. Baker ("Baker") has served as a director to the Company's Board since 1984 and is a member of the Company's Audit & Compliance Committee.  Baker is a citizen of the State of Illinois.

19.     Defendant Jan S. Hoover ("Hoover") has served as a director to the Company's Board since 1995, is Chairwoman of the Audit & Compliance Committee and member of the Company's Executive and Governance & Nominating Committees.  Hoover is a citizen of the Commonwealth of Virginia.

20.     Defendant Charles W. Steger ("Steger") has served as a director to the Company's Board since 2000 and is a member of the Company's Executive Committee.  Steger is a citizen of the Commonwealth of Virginia.

21.     Defendant Christopher M. Hallberg ("Hallberg") has served as a director to the Company's Board since 1988 and is a member of the Company's Credit & Enterprise Committee.  Hallburg is a citizen of the Commonwealth of Virginia.

22.     Defendant Gregory L. Fisher ("Fisher") has served as a director to the Company's Board since 1992, is Chairman of the Company's Governance & Nominating Committee and a member of the Company's Audit & Compliance and Executive Committees.  Fisher is a citizen of the State of Delaware.

23.     Defendant Keith L. Wampler ("Wampler") has served as a director to the Company's Board since 2004 and is a member of the Company's Credit & Enterprise Risk Committee.  Wampler is a citizen of the Commonwealth of Virginia.

24.     Defendant Alan W. Myers ("Myers") has served as a director to the Company's Board since 1998 and is a member of the Company's Credit & Enterprise Risk Committee. Myers is a citizen of the State of West Virginia.

25.     Defendants Barham, Smoot, Parrish, Dalton, Combs, Irvin, Baker, Hoover, Steger, Hallberg, Fisher, Wampler and Myers are collectively referred to hereinafter as the "Individual Defendants."

26.     Defendant Union First is a Virginia corporation with its principal executive offices located at 1051 East Cary Street, Suite 1200, Richmond, Virginia 23219.  Union First is a bank holding company.  Union First offers financial services through its community bank subsidiary Union First Market Bank and three non-bank financial services affiliates.  Union First common shares trade on the NASDAQ Exchange under the ticker symbol "UBSH."

27.     Defendant StellarOne Bank is a wholly-owned subsidiary of StellarOne. Following the close of the Proposed Transaction, StellarOne Bank will merge with and into Union First and cease to exist as a separate entity.

28.     The Individual Defendants, StellarOne, Union First and StellarOne Bank are referred to as "Defendants."

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of the Individual Defendants' positions with the Company as directors and/or offices, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of StellarOne and owe Plaintiff and the other members of the Class the duties of good faith, fair dealing and loyalty.

30.     By virtue of their positions as directors, one of whom is an officer, of StellarOne, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause StellarOne to engage in the practices complained of herein.

31.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with due care.  To diligently comply with these duties, the directors of a corporation may not take any action that:

   a.     Adversely affects the value provided to the corporation's shareholders;

   b.     Contractually prohibits them from complying with or carrying out their fiduciary duties;

   c.     Discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

   d.     Will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

32.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public shareholders of StellarOne, including their duties of loyalty, good faith and independence.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of StellarOne common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

34.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of May 3, 2013, StellarOne had 22,713,422 shares of common stock outstanding. The holders of these shares are believed to be geographically dispersed through the United States;

b.     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

i.     Whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.     Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.     Whether the Individual Defendants have breached any of their fiduciary duties to Plaintiff and to the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, and fair dealing;

iv.     Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction;

v.        Whether Union First aided and abetted the Individual Defendants' breaches of fiduciary duty;

vi.       Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

vii.     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.    Background**

35.    StellarOne is a single bank holding company based in Charlottesville, Virginia. StellarOne Bank is StellarOne's subsidiary bank, which is headquartered in Christiansburg, Virginia. StellarOne Bank is one of the largest independent commercial bank holding companies headquartered in Virginia. As of December 31, 2012, StellarOne Bank's consolidated total

assets of approximately $3.0 billion are one of the largest independent bank holding companies headquartered in the Commonwealth of Virginia.  Upon completion of the Proposed Transaction, the combined entity will have approximately $5.7 billion in deposits in market – making the combined entity the sixth largest bank in Virginia by deposits.



## Growing Market Share

### Virginia Deposit Market Share

| Rank | Institution (ST) | Number of Branches | Deposits in Market ($mm) | Market Share (%) |
|---|---|---|---|---|
| 1 | Wells Fargo & Co. (CA) | 295 | 29,350 | 17.4 |
| 2 | Bank of America Corp. (NC) | 177 | 22,233 | 13.2 |
| 3 | BB&T Corp. (NC) | 379 | 21,452 | 12.7 |
| 4 | Capital One Financial Corp. (VA) | 86 | 18,540 | 11.0 |
| 5 | SunTrust Banks Inc. (GA) | 239 | 17,168 | 10.2 |
| | Pro Forma - Union First Market Bkshs Corp. (VA) | 146 | 5,702 | 3.4 |
| 6 | United Bankshares Inc. (WV) | 68 | 4,176 | 2.5 |
| 7 | Carter Bank & Trust (VA) | 88 | 3,502 | 2.1 |
| 8 | Union First Market Bkshs Corp. (VA) | 90 | 3,227 | 1.9 |
| 9 | TowneBank (VA) | 21 | 3,096 | 1.8 |
| 10 | PNC Financial Services Group (PA) | 101 | 2,829 | 1.7 |
| 11 | StellarOne Corp. (VA) | 56 | 2,475 | 1.5 |
| 12 | Burke & Herbert Bank & Trust (VA) | 25 | 2,077 | 1.2 |
| 13 | Cardinal Financial Corp. (VA) | 25 | 1,893 | 1.1 |
| 14 | Citigroup Inc. (NY) | 12 | 1,763 | 1.0 |
| 15 | First Citizens BancShares Inc. (NC) | 47 | 1,249 | 0.7 |
| | Totals (1-10) | 1,544 | 125,572 | 74.3 |
| | Totals (1-135) | 2,616 | 169,012 | 100.0 |

Source: SNL Financial
Deposit data as of 6/30/2012; pro forma for pending transactions

5

36.     StellarOne Bank's services include: individual and commercial demand and time deposit accounts, commercial and consumer loans, residential mortgages, credit card services and deposit services.  StellarOne Bank, through its wealth management segment, offers a variety of wealth management and personal trust services including estate administration, employee benefit plan administration and planning addressing the specific investment and financial management needs to its customers.

37.     The Company's operating strategy is to generate interest income, fees and other revenue growth through business lines that emphasize higher yielding assets funded by core

deposits.  Also, the Company's growth strategies include new branch expansion, acquisitions and the development of new products and services.

38.     On March 27, 2012, StellarOne announced that Barham would be retiring from the Company and that StellarOne was initiating a CEO succession plan.

<u>StellarOne is Poised For Financial Growth</u>

39.     Over the past year, StellarOne has demonstrated strong prospects for future growth and earnings.  On April 25, 2012 the Company announced that the Board approved a quarterly cash dividend in the amount of $0.06 per share.

40.     On April 26, 2012, the Company reported its financial results for the first quarter of 2012 on Form 10-Q filed with the U.S. Securities Exchange Commission ("SEC").  The Company reported first quarter 2012 earnings of $5.5 million, representing a 92% increase over net income of $2.9 million for the same quarter in 2011.  In the press release to shareholders, Barham stated:

> We are pleased to report a strong quarter to begin 2012, with continuing improvements in asset quality, solid non-interest income growth and reduced operating expenses. Net charge-offs improved to 0.35% of average loans compared to 0.86% in the last quarter, and nonperforming assets as a percentage of total assets improved to 1.52% compared to 1.64% last quarter. In addition, the first quarter saw marked improvement in operating expenses as compared to last quarter, reflecting an ongoing effort to improve our efficiency and profitability. We continue to see improving loan activity within the commercial loan portfolio, with C&I loans providing the strongest contribution at 5% growth over last quarter.

41.     On May 14, 2012, the Company announced its results of the phase one efficiency initiative (the "Growth Strategy").  This initiative was driven by the Company's management to become more efficient and align the Company to its business strategy.  In a press release to shareholders, the Company stated that "[o]perating savings from recent efforts are expected to begin in third quarter of 2012 and reach approximately $2.2 - $2.4 million of annualized cost

savings by 2013." On July 25, 2012, the Company's Board announced a quarterly cash dividend in the amount of $0.06 per share.

42.    On July 26, 2012 the Company announced second quarter financial results surpassing second quarter results for the same quarter in 2011.  Specifically, the Company's second quarter 2012 net income increased to $4.9 million from $3.3 million in 2011—representing a 47.7% increase.

43.    On October 25, 2012 the Company announced strong third quarter financial results.  Specifically, the Company reported that net income increased to $5.6 million from $3.9 million in 2011—representing a 41.7% increase for the same quarter of the previous year.  The Company also announced that in light of the Company's earnings improvement, the Board approved a quarterly dividend **increase** of $0.08 per share, a 33% increase over the previous quarterly dividend rate.

44.    To further accelerate improvement in the Company's share price, on December 19, 2012 the Company announced that its Board approved a share repurchase program (the "Share Repurchase Program") authorizing the Company to repurchase up to 1,500,000 shares of its own stock at the management's discretion (to date the Company has repurchased 320,000 shares).[1]  According to the Company's press release, such shares represent approximately 6% of the total shares outstanding as of September 30, 2012.

45.    On January 18, 2013, StellarOne announced that it would acquire the Village Bank and Trust Financial Corporation ("Village Bank") branch located at 11450 Robious Road in Richmond, Virginia.  In a press release to shareholders, Joshua M. Gehring, Senior Executive Vice President and Director of Retail Banking at StellarOne Bank stated: "[t]his branch

---

[1] BB&T Capital Markets, *STEL Upside Starts the Year, Dividend Increased, Maintain Hold* (Apr. 25, 2013).

acquisition aligns with our previously announced plans to develop a retail branch network in Richmond that will support our established lines of business in Richmond *and complement our growth strategy*." (emphasis added).

46.    On January 24, 2013, the Company announced its fourth quarter financial results. The Company's fourth quarter results convincingly surpassed the fourth quarter results for 2011. StellarOne reported net income available to common shareholders of $6.2 million compared to $4.8 million in 2011, an increase of 30.4%.   Also, full year 2012 earnings available to shareholders was $22.2 million, up 65% compared to $13.4 million in 2011.  In a press release to shareholders, Barham stated:

> 2012 was a rewarding year for StellarOne . . . [w]e achieved significantly improved profitability in large part due to asset quality improvement, but also saw noninterest income grow 10.6% annually led by our mortgage line of business, with solid contributions from commercial and retail banking as well as wealth management. We continued to strengthen our talented team, and opened three strategic branch locations in Charlottesville, Richmond and Virginia Beach. Loan growth was stronger in the second half of the year, and we have some positive momentum heading into 2013.

<u>Positive Momentum and Financial Growth Continue in 2013</u>

47.    On April 25, 2013 the Company announced its 2013 first quarter financial results. StellarOne reported net income of $5.9 million compared to $5.5 million in 2012, a 7.5% increase over the first quarter in 2012.  The Board also increased its cash dividend to $0.10 per share, **a 25% increase** over the previous dividend.  In a press release to shareholders, Barham stated:

> We are pleased with our start in 2013, with improving metrics around organic loan growth and asset quality . . . Loan growth and improved funding costs allowed for a stable net interest margin and revenue growth over last year. Operating expenses remained in line despite operating costs associated with opening new branches and other strategic investments in the business that will yield pay-offs in the future.

48.     However, rather than permitting the Company's shares to trade freely and allowing its public shareholders to reap the benefits of the Company's growth strategy, the Individual Defendants have acted for their personal benefit and to the detriment of the Company's public shareholders, by entering into the Merger Agreement.

**B.     The Proposed Transaction**

49.     On June 10, 2013, StellarOne and Union First issued a joint press release announcing that they had entered into the Merger Agreement. The press release stated:

> Richmond, Va., June 10, 2013 – Union First Market Bankshares Corporation (NASDAQ: UBSH, or "Union") and StellarOne Corporation (NASDAQ: STEL, or "StellarOne") today announced the signing of a definitive merger agreement, pursuant to which Union will acquire StellarOne, creating the largest community banking institution in the Commonwealth of Virginia.
>
> Based on financials reported on March 31, 2013, the combined companies would have total assets of $7.1 billion, deposits of $5.8 billion and loans of $5.2 billion. Union will operate in all major Virginia markets, deepening its presence in its current footprint and expanding in key trade areas and, on a pro forma basis, will have the fifth largest branch network in Virginia. The company will retain the Union name and corporate headquarters will remain in Richmond.
>
> "We are excited about the opportunity to bring our organizations together and establish the next great Virginia bank. We have long believed that the combination of Union and StellarOne would be powerful. Our combined statewide footprint coupled with our shared commitment to exceptional service positions us as a strong competitor against large regional institutions and smaller community banks alike," said G. William Beale, Chief Executive Officer of Union. "The combination of two of Virginia's largest community banks provides Union with the growth and synergies to continue to deliver a best in class customer experience, offer superior financial services and solutions, provide a rewarding experience for our teammates and generate top-tier financial performance for our shareholders."
>
> "The combination of our two great Virginia based institutions provides tremendous new opportunities for our customers, shareholders and employees. This transaction marks a significant milestone for banking in Virginia," said O. R. Barham, Jr., President and Chief Executive Officer of StellarOne. "The compatible culture of our two organizations makes this partnership a natural fit. We both are deeply committed to our communities and this merger will allow us to better serve current and future customers in markets across the Commonwealth."

Union's current executive management, led by Beale, will form the core of the company's leadership team. The Union Board of Directors will expand to 19 members, and will be comprised of 11 members from the current Union Board and eight members from the StellarOne Board. Current StellarOne Chairman Raymond D. Smoot, Jr. will serve as Chairman of the combined company and current Union Chairman Ronald L. Hicks will serve as Vice Chairman. Barham will retire as previously announced, with his retirement effective upon closing of the merger.

Under the terms of the agreement, common shareholders of StellarOne will receive 0.9739 shares of Union common stock for each share of StellarOne. This implies a deal value per share of $19.50 or approximately $445.1 million in the aggregate based on Union's closing stock price of $20.02 on June 7, 2013.

In consideration of the merger, extensive due diligence was performed by both companies over a four-week period. Under the proposed terms, the transaction is expected to be accretive to Union's earnings per share in 2014 and thereafter. Further it is anticipated that the transaction will be immediately accretive to Union's capital ratios and result in capital levels well in excess of regulatory minimums.

The merger agreement has been unanimously approved by the board of directors of each company. The companies expect to consummate the transaction on or around January 1, 2014, subject to customary closing conditions, including regulatory and shareholder approvals.

50.    Following the consummation of the Proposed Transaction, StellarOne shareholders will be substantially diluted.  Upon consummation of the Proposed Transaction, StellarOne shareholders will own approximately 47% of the Company compared to Union First shareholders who will own approximately 53% of the combined entity.[2]  Plaintiff alone will lose shares of stock based upon the currently proposed terms.

51.    The consideration offered to StellarOne's public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of StellarOne's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction, given the Company's prospects for future growth and earnings and the

---

[2] Union + StellarOne Corporation, *The Next Great Virginia Bank*—Investor Presentation (June 10, 2013).

fact that the Company is in the midst of a massive turnaround plan that promises to greatly increase the Company's value.

52.     Additionally, the Merger Agreement contains no "collar" guaranteeing StellarOne shareholders a minimum dollar threshold for their shares under the Exchange Ratio.  Thus, they are at the mercy of the value of Union First shares at the time the Proposed Transaction is effectuated, which may be affected by numerous factors and therefore have little or no relationship to the value of their StellarOne shares at that time.  Should there be a major market shift in Union First's common stock, the consideration that StellarOne shareholders will receive for their shares will be even lower than its calculated value on June 10, 2013.

53.     Moreover, the Proposed Transaction was driven by the self-interest of certain Individual Defendants and Company's officers.  Specifically, as a result of the consummation of the Proposed Transaction, certain StellarOne officers and directors will receive lucrative payments on currently unvested stock options, performance units, shares and restricted shares, totaling approximately $6.7 million.  Also, a Form 8-K filed on June 12, 2013 provides that "[f]ollowing the Merger, Raymond D. Smoot, Jr., current Chairman of the Board of Directors of StellarOne, will serve as Union's Chairman of the Board of Directors . . ." and "[a]fter the Merger, the current members of StellarOne Bank's Board of Directors will remain directors of StellarOne Bank until its merger with Union Bank.   Prior to the effective date of the merger of StellarOne Bank with and into Union Bank, those members of StellarOne Bank's Board of Directors who are not serving on Union's Board of Directors will be offered positions on Union Bank's Board of Directors."

54.     The aforementioned lack of a collar, lucrative payments and positions to be obtained by the Company's officers and directors cast further doubt that the process leading to the announcement of the Proposed Transaction was fair to StellarOne's shareholders.

### C.     The Unreasonable Deal Protection Devices

55.     On June 12, 2013, the Company filed a Form 8-K with the SEC wherein it disclosed the terms of its Merger Agreement.  To the detriment of StellarOne shareholders, the Individual Defendants agreed to certain preclusive deal protection devices that operate conjunctively to ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

56.     Specifically, Section 5.5(a) of the Merger Agreement is a restrictive no-solicitation provision that prohibits the members of the Board from taking any affirmative action to comply with their fiduciary duties to get the best price for StellarOne shareholders, including initiating, soliciting, encouraging or facilitating any inquiries or proposals and engaging or participating in any negotiations or discussions concerning an "Acquisition Proposal" (defined in the Merger Agreement).

57.     The Merger Agreement also includes a strict standstill provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

58.     Section 5.5(d) of the Merger Agreement provides a limited situation in which the StellarOne Board may enter into discussions and negotiations in response to "an unsolicited, bona fide Acquisition Proposal as defined in the Merger Agreement.  In order to receive consideration, an Acquisition Proposal must not be the result of any breach of, or any action inconsistent with any of the provisions set forth in Section 5.5(a) of the Merger Agreement.  The

Board must also conclude in good faith, after having consulted with its outside legal counsel, that failure to consider the offer would reasonably constitute a breach of the fiduciary duties of the Board to the Company's stockholders under applicable law.

59.      Even then, however, in the event the Company receives a qualifying Acquisition Proposal, StellarOne must notify Union First, orally and in writing, no more than twenty-four (24) hours after receipt, of the identity and material terms of the person making the Acquisition Proposal.

60.      Thereafter, if the Board determines that the competing Acquisition Proposal constitutes a "Superior Proposal," (as defined in the Merger Agreement), § 5.5(f) requires the Board to grant Union First at least five (5) business days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a Superior Proposal.

61.      Furthermore, the Merger Agreement provides that StellarOne must pay to Union First a termination fee of $21,800,000 if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

62.      Ultimately, these preclusive deal protection devices illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative Acquisition Proposal that constitutes, or would reasonably be expected to constitute, a Superior Proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions will

foreclose the new bidder from providing the needed market check of Union First's inadequate offer.

63.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of Fiduciary Duties**

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to StellarOne shareholders.

66.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in StellarOne.

67.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to StellarOne shareholders because, among other reasons, they failed to take steps to maximize the value of the Company's shareholders, by, among other things, failing to adequately consider potential acquirers, and instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of StellarOne shareholders.  Moreover, the Individual Defendants failed to secure safeguards on behalf of the Company's shareholders against the decline in the value of

the stock component of the consideration to be paid to StellarOne shareholders in the Proposed Transaction.

68.     By reason of the foregoing acts, practices and courses of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

69.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of StellarOne's assets and businesses and have been and will be prevented from obtaining a fair price for their common shares.

70.     Unless the Court enjoins the Proposed Transaction, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

71.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against Union First
for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     Union First has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Union First shareholders, and have participated in such breaches of fiduciary duties.

74.      Union First knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Union First rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.       Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

B.       Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for the Company's shareholders;

C.       Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.       Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

E.       Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

F.       Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

DATED:  June 14, 2013

Respectfully submitted,

FINKELSTEIN THOMPSON LLP

By: _/s/ *Robert O. Wilson*Robert O. Wilson
(VSB 77791)
Burton H. Finkelstein
L. Kendall Satterfield
Rosalee B. C. Thomas
1077 30th Street, N.W., Suite 150
Washington, DC 20007
Tel: (202)-337-8000
Fax: (202)-337-8090
rwilson@finkelsteinthompson.com
bfinkelstein@finkelsteinthompson.com
ksatterfield@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com

*Counsel for Plaintiffs*

**OF COUNSEL:**

FARUQI & FARUQI, LLP
Nadeem Faruqi
Juan E. Monteverde
David M. Sborz
369 Lexington Ave., Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
nfaruqi@faruqilaw.com
jmonteverde@faruqilaw.com
dsborz@faruqilaw.com