**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **JACLYN CRESCENTE,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Civil Action No. 3:13-cv-0021 (NKM/RSB)** |
| | **)** | |
| **STELLARONE CORPORATION,** | **)** | |
| ***et al.*,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..... 1

THE SETTLEMENT ..... 5

ARGUMENT ..... 6

I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ..... 6

A. Standard of Review ..... 7

B. Class Certification Should Be Granted For Settlement Purposes Under Rule 23 ..... 7

C. The Proposed Class Here Satisfies the Criteria of Rule 23(a) ..... 8

1. Numerosity ..... 8

2. Commonality ..... 9

3. Typicality ..... 10

4. Adequacy of Representation ..... 10

D. The Proposed Class Satisfies the Criteria of Rule 23(b) ..... 13

II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, MERITING THIS COURT'S APPROVAL ..... 15

A. Fairness Determination ..... 15

1. The Posture of the Case and the Extent of Discovery ..... 16

2. The Circumstances Surrounding the Negotiations ..... 18

3. Proposed Lead Counsel Has Extensive Experience in the Area of Securities Class Action Litigation ..... 19

B. Adequacy Determination ..... 19

1. The Settlement is "Adequate" Under the First Three *Jiffy Lube* Factors. ..... 20

a. Disclosure Claims ..... 21

2. There Are No Solvency Issues ..... 22

3. The Lack of Opposition to the Settlement ........ 23

III. PROPOSED LEAD COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED ........ 24

A. The Requested Fee is Reasonable Under the Lodestar Analysis ........ 24

1. The Time and Labor Expended, Awards in Similar Cases, and Customary Fee For Similar Work ........ 25

2. The Novelty and Difficulty of Questions Raised By the Litigation ........ 28

3. The Skill Required to Perform the Legal Services ........ 29

4. The Opportunity Costs Due to Acceptance of the Case ........ 29

5. The Attorney's Expectation at the Out-Set of the Litigation and the "Undesirability" of the Action ........ 30

6. Time Limitation Imposed by Client or Circumstances ........ 31

7. The Results Obtained ........ 31

8. The Experience, Reputation and Ability of the Attorneys ........ 33

9. The Length of the Professional Relationship With The Client ........ 34

CONCLUSION ........ 35

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re A.H. Robins Co., Inc.*,
880 F.2d 709 (4th Cir. 1989) ....................8

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
54 F.3d 69 (2d Cir. 1995) ....................32

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................7, 8

*In re Bearingpoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ....................9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ....................11

*Chrysler Corp. v. Dann*,
223 A.2d 384 (Del. 1966) ....................30

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
270 F.R.D. 247 (D.S.C. 2010) ....................9, 10, 13

*DiFelice v. US Airways, Inc.*,
235 F.R.D. 70 (E.D. Va. 2006) ....................8

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) ....................33

*Franklin Balance Sheet Inv. Fund v. Crowley*,
No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007)....................27, 30

*Gilmartin v. Adobe Res. Corp.*,
No. 12467, 1992 Del. Ch. LEXIS 80 (Del. Ch. April 6, 1992) ....................21

*Globis Capital Partners v. Safenet*,
No. 2772-VCS, 2007 Del. Ch. LEXIS 237 (Del. Ch. Dec. 20, 2007) ....................27

*Henkel v. Battista*,
No. 3419-VCN, 2008 Del. Ch. LEXIS 292 (Del. Ch. Dec. 16, 2008)....................28

*In re Infinity Broad. Corp. S'holders Litig.*,
802 A.2d 285 (Del. 2002) ....................32

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .................... *passim*

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974),
*abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ....................25, 34

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
No. RDB-05-841, 2005 U.S. Dist. LEXIS 26837 (D. Md. Nov. 3, 2005).........................20, 27

*Kelley v. Norfolk & W. Ry. Co.*,
584 F.2d 34 (4th Cir. 1978) .........................................................................................9

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)..........................................................................33

*In re Lin Broadcasting Corp. S'holders Litig.*,
No. 14039, 1995 Del. Ch. LEXIS 167 (Del. Ch. Sept. 15, 1995)...........................................27

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08-cv-1310, 2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ......................7, 15

*MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*,
501 A.2d 1239 (Del. Ch. 1985)...............................................................................20

*McLaurin v. Prestage Foods, Inc.*,
271 F.R.D. 465 (E.D.N.C. 2010) ...........................................................................14

*In re Microstrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................................24

*In re Microstrategy, Inc. Sec. Litig.*,
150 F. Supp. 2d 896 (E.D. Va. 2001) ........................................................................23

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ........................................................................ *passim*

*Montague v. Dixie Nat'l Life Ins. Co.*,
No. 3:09-687-JFA, 2010 U.S. Dist. LEXIS 111362 (D.S.C. Oct. 19, 2010)............................8

*Muhammad v. Nat'l City Mortg., Inc.*,
No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. Dec. 19, 2008) .......7, 16, 18, 23

*In re NCS Healthcare, Inc. S'holders Litig.*,
No. 19786, 2003 Del. Ch. LEXIS 56 (Del. Ch. May 28, 2003) .............................................27

*In re Netsmart Tech., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007)......................................................................22, 32, 33

*Paramount Commc'ns, Inc. v. QVC Network, Inc.*,
637 A.2d 34 (Del. 1994) .........................................................................................21

*In re Plains Res. Inc. S'holders Litig.*,
No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005)....30

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....11

*In re Red Hat, Inc. Sec. Litig.*,
No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619 (E.D.N.C. June 11, 2010)....18, 20

*Robinson v. Equifax Info. Servs., LLC*,
560 F.3d 235 (4th Cir. 2009)....25

*Rucker v. McNair*,
No. 5:95-CV-1054-BO(2), 1997 U.S. Dist. LEXIS 22036 (E.D.N.C. Dec. 7, 1997)....24, 31

*Ryan v. Gifford*,
No. 2213-CC, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009)....32

*S.C. Nat'l Bank v. Stone*,
139 F.R.D. 325 (D.S.C. 1991)....10, 11

*Seinfeld v. Coker*,
847 A.2d 330 (Del. Ch. 2000)....30

*In re Staples, Inc. S'holders Litig.*,
792 A.2d 934 (Del. Ch. 2001)....21

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995)....24

*In re Talley Indus., Inc. S'holders Litig.*,
No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998)....22

*Tandycrafts, Inc. v. Initio Partners*,
562 A.2d 1162 (Del. 1989)....31, 32

*Teague v. Bakker*,
213 F. Supp. 2d 571 (W.D.N.C. 2002)....24

*In re The Topps Co. S'holders Litig.*,
924 A.2d 951 (Del. Ch. 2007)....32

*In re Vitalink Commc'ns Corp. S'holders Litig.*,
No. 12085, 1991 Del. Ch. LEXIS 195 (Del. Ch. Nov. 8, 1991)....30

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....23

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ....................26

*Wayne Cnty. Emps.' Ret. Sys. v. Corti*,
954 A.2d 319 (Del. Ch. 2008)....................20

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................18

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986) ....................8

**Other Authorities**

Federal Rule of Civil Procedure 23 .................... *passim*

## PRELIMINARY STATEMENT

Plaintiff Jaclyn Crescente ("Plaintiff") respectfully submits this brief in support of her application for: (1) certification of a class in connection with the proposed settlement (the "Settlement") of this action (the "Action"); (2) approval of the Settlement, pursuant to the Stipulation of Settlement filed with the Court on December 23, 2013 (the "Stipulation")[1]; (3) an award of attorneys' fees and expenses in the aggregate of $325,000 for the services Plaintiff's counsel rendered in the successful prosecution and settlement of the Action ("Fee and Expense Award"). The Settlement provides for a valuable result to all StellarOne Corporation ("StellarOne") shareholders and for more complete information that allowed them to make a fully-informed decision on the merits of the merger between StellarOne and Union First Market Bankshares Corporation ("Union First").

For the reasons set forth below, Plaintiff respectfully requests that the Court certify the Class (as defined herein) in connection with the proposed Settlement, grant final approval of the Settlement, and approve the proposed Fee and Expense Award for services performed by Plaintiff's counsel.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 10, 2013, StellarOne and Union First announced the execution of a definitive Agreement and Plan of Reorganization (the "Merger Agreement") providing that StellarOne's shareholders would receive 0.9739 common shares of Union First for each share of StellarOne common stock they own ("Proposed Transaction"). The Proposed Transaction was valued at $445 million, or $19.50 per share.

---

[1] Annexed as Exhibit A to the Declaration of Juan E. Monteverde in Support of Certification of the Settlement Class, Final Approval of the Settlement and Award of Attorneys' Fees and Expenses ("Monteverde Decl.").

On June 14, 2013, Plaintiff filed her class action complaint (the "Complaint") with the Court. The gravamen of the complaint was the allegation that the StellarOne Directors breached their fiduciary duties of loyalty, due care, and good faith to StellarOne shareholders and that Union First aided and abetted said breaches of fiduciary duty. Thereafter, on July 26, 2013, StellarOne, the StellarOne Directors, and Union First filed their respective motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

On August 15, 2013, Union First filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in connection with the Proposed Transaction.

After carefully reviewing the Registration Statement, in addition to consulting with Plaintiff's financial expert, Plaintiff determined that Defendants failed to disclose material information in the Registration Statement in order for shareholders to cast an informed vote. As a result, on August 15, 2013, Plaintiff filed her Amended Class Action Complaint (the "Amended Complaint") incorporating all previous allegations against Defendants for breaches of fiduciary duty and aiding and abetting said breaches and included additional allegations that the Individual Defendants violated Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934.

On September 3, 2013, Plaintiff through her counsel, Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Proposed Lead Counsel"), sent a letter to Defendants requesting limited categories of documents including, among other things: minutes and notes of meetings of the board of directors of StellarOne (the "Board"); financial projections and forecasts prepared by StellarOne management; and presentations to the Board by Raymond James & Associates, Inc. ("Raymond

James"). Thereafter, on September 11, 2013, the Faruqi Firm and counsel for StellarOne agreed on limited expedited discovery during a joint conference call.

On September 12, 2013, StellarOne, the Individual Defendants, and Union First each filed their motions to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

On September 20, 2013, Plaintiff, the Faruqi Firm, Defendants, and their respective counsel (the "Parties") entered into a confidentiality stipulation and protective order providing for the confidential exchange of information.

On September 26, 2013, Union First filed with the SEC an amended Registration Statement on Form S-4 in connection with the Proposed Transaction.

On September 27, October 4, October 7, and October 22, 2013, StellarOne produced core documents pertaining to the Proposed Transaction. Thereafter, StellarOne produced certain internal, non-public documents, including, but not limited to: minutes of meetings of the board of directors of StellarOne; engagement letters between Raymond James and StellarOne; non-binding indications of interest between StellarOne and Union First; and presentations made to the Board by Raymond James.

On October 11, 2013, Union First filed with the SEC a second amended Registration Statement on Form S-4 with the SEC in connection with the Proposed Transaction. That same day, Plaintiff, through the Faruqi Firm, sent a demand letter to Defendants requesting, among other things: (i) increased consideration to StellarOne shareholders; (ii) adjustments in the termination fee and information rights provision; and (iii) supplemental disclosures to the Registration Statement.

To further evaluate the fairness of the consideration offered in the Proposed Transaction and the material omissions in the Registration Statement and the amendments thereto, Plaintiff took the deposition of O.R. Barham, Jr., the President and Chief Executive Officer of StellarOne and Christopher W. Choate, Senior Vice President at Raymond James on October 14, 2013 and October 18, 2013 respectively.

On October 22, 2013, StellarOne, by and through its counsel, sent a letter containing a counteroffer to the Faruqi Firm in response to the October 11, 2013 settlement demand letter.

On October 23, 2013, Plaintiff, through the Faruqi Firm, sent a supplemental demand letter requesting, among other things: (i) an adjustment in the termination fee or a fair summary of the termination fee analysis performed by Raymond James and relied upon by the Board; (ii) modification to the information rights provision; and (iii) additional supplemental disclosures not addressed in StellarOne's counteroffer sent to the Faruqi Firm on October 22, 2013.

On October 29, 2013, Defendants, through their counsel, sent a second letter counteroffer to the Faruqi Firm in response to Plaintiff's October 23, 2013 supplemental demand letter to Defendants. Between October 11, 2013 and November 20, 2013, and further ensuring that the settlement negotiations were extensive and adversarial, the Faruqi Firm and Defendants exchanged proposals and counter-proposals concerning the nature and scope of the Supplemental Disclosures and the Settlement releases. Ultimately, Defendants agreed to provide StellarOne shareholders with more specific information including, among other things, critical assumptions made by Raymond James when it analyzed the Proposed Transaction and determined that it was fair. These disclosures addressed many of the issues raised by Plaintiff in her Amended Complaint.

At the conclusion of these negotiations, Plaintiff and the Faruqi Firm (which has substantial experience in this type of litigation) unanimously agreed to enter into the Settlement.

**THE SETTLEMENT**

After reaching an agreement in principle on the substantive terms of the Settlement, the Parties adopted the Memorandum of Understanding ("MOU") that was subject to the filing of the Supplemental Disclosures. The Supplemental Disclosures were set forth in a Form 8-K filed by StellarOne with the SEC on November 21, 2013 and included additional material information that shareholders could rely upon when deciding whether to vote their shares in favor of the Proposed Transaction.[2] The Supplemental Disclosures provided material information to StellarOne shareholders regarding, in part, the following:

- With respect to the *Discounted Cash Flow Analysis*: (i) Raymond James assumed 5% total asset growth and net income growth for periods 2016-2018, for both StellarOne and Union First, as approved by StellarOne management; (ii) Raymond James assumed 2019 net income equal to an increase of 5% over 2018 net income, for both StellarOne and Union First, as approved by StellarOne management; (iii) the tangible common equity for Union First was adjusted for an anticipated accumulated other comprehensive income charge of $4.5mm in 2013 and $6mm in 2014; and (iv) the date to which the forecasted cash flows were discounted, and whether end-of period or mid-period discounting was utilized;
- With respect to the *Select Comparable Companies Analysis*, the criteria Raymond James used to select the comparable companies;

[2] The Form 8-K containing the Supplemental Disclosures is attached as Exhibit 1 to the Stipulation.

- With respect to Keefe, Bruyette & Woods, Inc.'s ("KBW") *Selected Companies Analysis*, the criteria used to select the comparable companies and the metrics and key data observed by KBW in this analysis;
- With respect to KBW's *Selected Transactions Analysis*, the metrics and key data observed by KBW in this analysis; and
- With respect to the *Background of the Merger* section, the Supplemental Disclosures included: (i) a fair summary of Raymond James' analysis, as discussed with the Board, regarding the circumstances of other potential acquirers; (ii) whether StellarOne and/or the Board performed a conflict check regarding Raymond James before selecting Raymond James as its financial advisor in the Proposed Transaction; (iii) whether Individual Defendant Raymond D. Smoot, Jr. disclosed to the Board that he had been offered the Chairman position with the surviving entity at the Special Meeting of the Board of Directors on March 18, 2013; and (iv) how the Board determined the independence of each member of the Transaction Review Committee.

In exchange for receiving these Supplemental Disclosures, Plaintiff, on behalf of the Settlement Class, agreed to release the claims asserted against Defendants.

Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate and in the best interests of all shareholders, meets all indicia of fairness and merits the Court's approval. Accordingly, Plaintiff respectfully requests that the Court approve the Settlement and enter the Scheduling Order as submitted.

## ARGUMENT

### I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that a Class be certified for settlement purposes pursuant to

Fed. R. Civ. P. Rules 23(b)(1) and (b)(2). For the reasons set forth below, certification under these Rules is appropriate because StellarOne could be subject to differing standards of conduct if claims of individual class members were prosecuted on an individual basis, and because the relief sought in the Settlement is exclusively injunctive and declaratory.

**A. Standard of Review**

"Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *12-13 (S.D. W. Va. Dec. 19, 2008) ("The essence of any settlement is compromise. A settlement compromising conflicting positions in class action litigation serves the public interest.").

In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Undiluted attention to the remaining requirements is of vital importance. *Id.*

**B. Class Certification Should Be Granted For Settlement Purposes Under Rule 23**

Class certification under Rule 23 has two primary components. First, the party seeking class certification must establish the four core requirements of Rule 23(a): (1) numerosity ("[a] class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequate representation (representatives "will fairly and adequately

protect the interests of the class”). *See In re A.H. Robins Co., Inc.*, 880 F.2d 709, 727 (4th Cir. 1989); *see also Amchem*, 521 U.S. at 613.

Second, a Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *In re A.H. Robins*, 880 F.2d at 727–728. In the present case, Plaintiff seeks certification under Rule 23(b)(1) and (2). Rule 23(b)(1) allows certification of a class if: (A) prosecuting separate actions would create a risk of inconsistent judgments which would establish incompatible standards of conduct for the party opposing the class; or (B) if adjudicating the claims of individual class members would, as a practical matter, be dispositive of the interests of non-party class members or impede their abilities to protect their own interests. Rule 23(b)(1) defines two types of class actions designed to prevent prejudice to parties arising from multiple potential suits involving the same subject matter. The difference between the two subsections is that Rule 23(b)(1)(A) focuses on possible prejudice to the defendants, while Rule 23(b)(1)(B) focuses on possible prejudice to the plaintiff class members. *See DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole. Rule 23(b)(2) classes are limited to class actions seeking primarily injunctive or declaratory relief. *See Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir. 1986).

### C. The Proposed Class Here Satisfies the Criteria of Rule 23(a)

#### 1. Numerosity

To meet the numerosity requirement, the class representative must first demonstrate that the purported class is so large that the joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Montague v. Dixie Nat’l Life Ins. Co.*, No. 3:09-687-JFA, 2010 U.S. Dist. LEXIS 111362, at *6-7 (D.S.C. Oct. 19, 2010). “There is no mechanical test for determining whether in

a particular case the requirement of numerosity has been satisfied. The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978).

As of November 26, 2013, there were approximately 6,000 holders of outstanding shares of StellarOne stock. Indeed, as of May 3, 2013, there were 22,713,422 shares of common stock issued and outstanding with owners spread geographically throughout the United States. Thus, the numerosity requirement is met. *See City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 251 (D.S.C. 2010) (finding numerosity requirement satisfied with approximately 100,919,886 outstanding shares of common stock and approximately 307 institutional holders of common stock during the proposed class period); *In re Bearingpoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (holding that numerosity had been met where there were more than 194 million shares of common stock outstanding, and "while the precise number of shareholders is unknown, it is reasonable to infer from this fact that there are hundreds, if not thousands, of potential class members disbursed throughout the country").

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Fourth Circuit has stated that a "common question is one that can be resolved for each class member in a single hearing" and that a "question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." *City of Ann Arbor*, 270 F.R.D. at 251 (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006)).

Here, Plaintiff is asserting claims on behalf of all StellarOne shareholders. Defendants acted on a common basis with respect to all shareholders. What proved to be the ultimate issue in the case was whether StellarOne gave adequate disclosure of information needed by

shareholders to cast an informed vote in connection with the Proposed Transaction. Defendants gave (or did not give) the same disclosures to all shareholders. Thus, whether the disclosures which were given were adequate was a common issue for all shareholders.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality requires that the claims of the named class representative be typical of those of the class; a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *City of Ann Arbor*, 270 F.R.D. at 251 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation marks omitted). Additionally, "[t]he typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 251 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)).

Here, Plaintiffs' circumstances are exactly the same as all other StellarOne shareholders, and the legal theory upon which their claims are based are exactly the same as that of other StellarOne shareholders. Indeed, the reason that Plaintiffs' claims are typical is the same reason why there are common issues. Defendants acted or failed to act in the same manner identically with respect to all shareholders, namely they failed to provide adequate disclosures regarding the Proposed Transaction.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." It is noted that "[t]he principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991).

Furthermore, "[t]his inquiry involves two issues: (i) 'whether plaintiffs have any interest antagonistic to the rest of the class;' and (ii) whether plaintiffs' counsel are 'qualified, experienced and generally able to conduct the proposed litigation.'" *Id.* at 329-330 (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). In addition, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard*, 155 F.3d at 338 (internal quotation marks omitted).

Here, Plaintiff received the same disclosures and consideration under the Proposed Transaction as all other StellarOne shareholders. In addition, Plaintiff would have to prove the same facts as any other shareholder to establish her claims, and therefore, has precisely the same interests and incentives as any other StellarOne shareholder to pursue claims related to the Proposed Transaction. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 313 (3d Cir. 1998):

> As discussed, the crux of this class action is the allegation that Prudential engaged in a scheme to defraud policyholders by means of company-wide deceptive sales practices. The named parties, like the members of the class, would need to establish this scheme in order to succeed on any of the claims in the Second Amended Consolidated Complaint. Even those class members with 'other' claims share the common task of demonstrating the existence and implementation of this scheme. Consequently, we believe the proposed class satisfies the adequacy of representation requirement of Rule 23(a).

As far as the adequacy of counsel is concerned, the Class is represented by law firms with national reputations in the class action field in the context of mergers and acquisitions such as the impugned transaction between StellarOne and Union First. The Faruqi Firm has extensive experience, is highly competent in prosecuting lawsuits similar to the pending actions, and has provided highly effective case management and guidance as lead counsel in numerous shareholder class actions and other complex litigation throughout the United States. In this capacity, the Faruqi Firm has obtained significant monetary and therapeutic recoveries, including

millions of dollars in increased merger consideration for public shareholders; and additional disclosure of significant material information so that shareholders could intelligently gauge the fairness of the terms of proposed transactions and other types of therapeutic relief designed to increase competitive bids and protect shareholder value. For instance, in *Rice v. Lafarge North America, Inc., et al.*, No. 268974-V (Md. Cir. Ct. Montgomery Cnty.), Faruqi & Faruqi, as co-lead counsel, represented the public shareholders of Lafarge North America ("LNA") in challenging the buyout of LNA by its French parent, Lafarge S.A., at $75.00 per share. After discovery and intensive injunction motions practice, the price per share was increased from $75.00 to $85.50 per share, or a total benefit to the public shareholders of $388 million. The *Lafarge* court gave Class counsel, including the Faruqi Firm, shared credit with a special committee appointed by the Board for a significant portion of the price increase. *See also In re Fox Entm't Grp., Inc. S'holders Litig.*, No. 1033-N (Del. Ch. 2005) (Faruqi, as co-lead counsel, instrumental in obtaining $450 million benefit); *In re Howmet Int'l S'holder Litig.*, No. 17575 (Del. Ch. 1999) (Faruqi, in coordination with special committee, obtained $61.5 million benefit).[3]

Similarly, Finkelstein Thompson LLP has specialized in securities class action litigation since 1977, with a special emphasis on prosecuting shareholder class actions brought nationwide against officers, directors and other parties responsible for corporate wrongdoing.[4] The firm has served as lead counsel in a number of class actions, including *Holly Glenn v. Polk Audio, Inc.*, No. 99-cv-4768 (Md. Cir.), where it obtained a $4.8 million settlement, representing an increase of nearly 50% of shareholder buyout value. In *In re Xicor, Inc. S'holder Litig.*, Master File No.:

[3] *See* Faruqi Firm Resume, annexed as Exhibit B to the Monteverde Decl..

[4] *See* Finkelstein Thompson LLP Firm Resume, annexed as Exhibit C attached to the Monteverde Decl.

1-04-CV-017801 (Sup. Ct. Cal.), Finkelstein Thompson LLP served as co-lead counsel and obtained an additional $2 million in consideration in connection with Intersil Corp.'s purchase of Xicor. In *In re Portec Rail Products, Inc. S'holder Litig.*, G.D. 10-3547 (Ct. Com. Pleas Pa.) the firm also served as co-lead counsel and successfully enjoined the merger between Portec and L.B. Foster Company due to the Portec Board's breaches of duty of candor and care. Most recently, Finkelstein Thompson LLP, as co-lead counsel in *Broad Based Equities v. Wylie, et al.*, Cause No. 2010-47387, (Tex Dist. Ct., 129th Judicial Dist. May, 23, 2011), gained valuable disclosures for shareholders and a decrease in the merger's termination fee.

This proven track record demonstrates Plaintiff's Counsel's ability to prosecute this class action with competence and vigor. *See City of Ann Arbor*, 270 F.R.D. at 253. Thus the adequacy requirement is satisfied.

**D. The Proposed Class Satisfies the Criteria of Rule 23(b)**

Here, Plaintiff seeks to a certify a Class pursuant to Rules 23(b)(1) and (b)(2). Rule 23(b)(1) allows for certification of a class if:

> [the] prosecut[ion of] separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the… adjudications or would substantially impair or impede their ability to protect their interests.

Rule 23(b)(2) allows for certification of a class if "the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The plaintiff must make two showings in order to proceed under Rule 23(b)(2). First, the complaint must seek

relief which is predominantly injunctive or declaratory. Second, the plaintiff must demonstrate that defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Both Rule 23(b)(1) and 23(b)(2) classes are mandatory classes, *i.e.*, no opt-outs are allowed. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 472 n.5 (E.D.N.C. 2010) ("If the court were to certify plaintiffs' class action under Rule 23(b)(1), potential plaintiffs would not be able to opt out of the class action because membership is mandatory under Rule 23(b)(1).… Only if the court were to certify plaintiffs' class action under the subdivision (b)(3) would there truly be an opt-in/opt-out situation.") (citing Fed. R. Civ. P. 23(c)(2), (3); *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994); 7AA *Charles Ann Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure*: Civil § 1784.1 (3d ed. 2005)).

Here, Plaintiff has satisfied the criteria of both Rule 23(b)(1) and 23(b)(2). The Class satisfies Rule 23(b)(1)(A) because there is a significant risk that if individual cases were brought on behalf of StellarOne shareholders, StellarOne would have to make different disclosures or the disclosures of the same facts worded differently, or have to make no additional disclosures at all. This could expose StellarOne to different standards of conduct with respect to a group to which StellarOne has an obligation under applicable securities laws and regulations to treat uniformly. The Class is also certifiable under Rule 23(b)(2) because the settlement relief is exclusively injunctive or declaratory. The Settlement, which consisted of the Supplemental Disclosures, ensured that shareholders would have all material information necessary in order to make an informed decision regarding the Proposed Transaction. Further, StellarOne acted or refused to

act on grounds generally applicable to the Class. StellarOne was acting in a uniform manner with respect to providing information to shareholders.

## II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, MERITING THIS COURT'S APPROVAL

The proposed Settlement is fair, reasonable and adequate in accordance with Rule 23. Plaintiff's counsel respectfully submits that it obtained all of the relief which could have reasonably been obtained in litigation for the Class. For the reasons set forth below, the Settlement should be approved.

The Fourth Circuit applies a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules, particularly Rule 23(e)(2), by considering: (A) "fairness," which focuses on whether the proposed settlement was negotiated at arm's length; and (B) "adequacy," which focuses on whether the consideration provided to the class members is sufficient. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). Additionally, "[t]here is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27.

### A. Fairness Determination

In assessing the fairness of a proposed settlement, the court must consider the following four factors: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *See Jiffy Lube*, 927 F.2d at 159. Based upon the following analysis of the factors, Plaintiff's counsel respectfully submit that the Settlement is fair.

### 1. The Posture of the Case and the Extent of Discovery

The first *Jiffy Lube* factor directs the Court to evaluate essentially how far the case has come from its inception. *See, e.g., Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *8. This factor assists the court in evaluating whether the plaintiff and his/her counsel have sufficiently developed the case such that they can appreciate the merits of the claims. *Id.* "There is, however, no minimum or definitive amount of discovery that must be undertaken." *Id.* at *8-9 (citing *Jiffy Lube*, 927 F.2d at 159). Similarly, the second *Jiffy Lube* factor -- evaluating the extent of discovery that has been conducted -- enables the Court to ensure that the case is ripe enough or well-enough developed for class counsel and plaintiffs alike to appreciate the full extent or landscape of their case when agreeing to enter into a settlement. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

In *Jiffy Lube*, for example, the Fourth Circuit noted that the parties had reached a settlement at a very early stage in the litigation and prior to any formal discovery. 927 F.2d at 159. However, the Fourth Circuit was convinced that the district court had not erred in approving the fairness of a proposed settlement based on various documents that the plaintiffs had filed and evidence that had been obtained through informal discovery, all of which supplied sufficient undisputed facts to support the extent of "the difficulties plaintiffs would have in proving fraudulent intent under both federal and state securities laws." *Id.*

In this case, discovery was comprehensive to support a move to settle the case mutually. The Merger Agreement was announced by StellarOne and Union First on June 10, 2013 and the Complaint was filed within four days on June 14, 2013 following which an Amended Class Action Complaint was filed on August 15, 2013. *See* Stipulation at ¶¶ A & B. Plaintiff moved by letter for discovery on September 3, 2013 and expedited limited discovery followed on September 11, 2013. Stipulation at ¶¶ F & G. Furthermore, Plaintiff took the depositions of a

director for StellarOne and a representative from Raymond James, which greatly assisted in evaluating the fairness of the proposed Merger through its consideration to shareholders of StellarOne. These depositions assisted in expediting the move towards early settlement negotiations. Stipulation at ¶¶ N & O.

After a confidential stipulation and protective order was entered into between the parties, and more core documents were produced by StellarOne between September 27 and October 22, 2013, negotiations were initiated through a Faruqi Firm letter to the Defendants. Stipulation at ¶¶ K & P.

These rapid action measures taken by the Plaintiff through the Faruqi Firm resulted in the conclusion of successful Settlement Negotiations by November 20, 2013 – all within a matter of just over five months since the inception of the initial complaint. Thus, this Settlement took place in an accelerated and comprehensive basis after appropriate discovery and after Plaintiff and Defendants concluded that a final Settlement was desirable under the unique circumstances of this case. As a result, it is not surprising that the Settlement was ironed out between the Parties before Defendants filed an answer, a feature that is due largely because of the nature of merger-related litigation in general, and the particular circumstances of this case involving the almost-instant awareness of the lack of disclosures facilitated through the publicly-filed Form S-4 filed with the SEC.

Based upon the review of the above documents and depositions-related testimony and ensuing confidentiality agreements that produced more documentary evidence supporting Plaintiff's case, the Faruqi Firm gained an adequate appreciation of the merits of the claims asserted and determined that the optimal result for the shareholders was for StellarOne to make the Supplemental Disclosures, enabling shareholders to make an intelligent, fully informed

decision regarding the proposed Merger.

Thus, despite the early settlement, Proposed Lead Counsel respectfully submits that the substantial discovery undertaken indicates Proposed Lead Counsel's appreciation for the merits of the particular claims asserted. *See Jiffy Lube*, 927 F.2d at 159 (concluding that the district court did not err in approving the proposed settlement even though it was reached early in the litigation before any formal discovery had occurred).

**2. The Circumstances Surrounding the Negotiations**

The third *Jiffy Lube* "fairness" factor requires the Court to evaluate the conditions and circumstances surrounding the settlement negotiations between Proposed Lead Counsel and Defendants. *See In re Mills Corp.*, 265 F.R.D. at 255. The objective of this factor is to ensure that "counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case." *Id.* (internal quotation marks omitted). In fact, "[a]bsent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *9-10 (citing *Newberg on Class Actions* § 11.28 at 1159 (3d ed. 1992)); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (same).

Here, the Settlement was the product of arm's length negotiations between Proposed Lead Counsel and defense counsel. *See* Stipulation at ¶ 30. Here, the parties' negotiations regarding Proposed Lead Counsel's Fee and Expense Award occurred months ***after*** executing the Stipulation. *Id.* at ¶¶ 14-15. In this case, absent evidence to the contrary, Plaintiff's counsel respectfully submit that the record supports a finding that the Settlement negotiations were the product of arm's length negotiations. *See In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619, at *6-7 (E.D.N.C. June 11, 2010) ("There is no evidence

to the contrary, and the docket supports a finding of arms-length negotiations as there have been numerous filings on contested matters. Therefore, the Court is satisfied that the negotiations were conducted such that each side actively advocated its own position.").

#### 3. Proposed Lead Counsel Has Extensive Experience in the Area of Securities Class Action Litigation

The final *Jiffy Lube* "fairness" factor looks to the experience of Proposed Lead Counsel in this particular field of law. *See In re Mills Corp.*, 265 F.R.D. at 255. This District has recognized that when lead counsel is comprised of "nationally recognized members of the securities litigation bar," it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement. *Id.* (quoting *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001)).

In this case the Proposed Lead Counsel here is the Faruqi Firm, a firm that has litigated extensively in the area of shareholder class and derivative actions and is well-reputed for pursuing its cases to a successful resolution through trial or settlement. *See* Monteverde Decl., Ex. B. In this case the Faruqi Firm, as Proposed Lead Counsel, has arrived at a well-considered judgment based on its knowledge of the facts of this case and its extensive litigation experience in the same and related areas that the Settlement is in the best interests of StellarOne shareholders and is an excellent achievement and appropriate under all the circumstances. Accordingly, the Settlement should receive this Court's final approval.

### B. Adequacy Determination

In turn, the factors to be considered in assessing a settlement's "adequacy" are: (1) the relative strength of the plaintiffs' case on the merits; (2) existence of any proof-related difficulties of proof or presence of strong defenses could assert and which the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and cost of additional litigation;

(4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. Based upon the following analysis of the factors, Proposed Lead Counsel respectfully submits that the Settlement is also adequate.

### 1. The Settlement is "Adequate" Under the First Three *Jiffy Lube* Factors.

Securities cases, like the present one, are "notably difficult and notoriously uncertain." *In re Mills*, 265 F.R.D. at 255. The first three *Jiffy Lube* factors address the "adequacy" of a settlement compelling a reviewing court to undertake a balancing inquiry involving how much the class gives up or sacrifices in settling a potentially strong case in light of how the class gains garnered in avoiding the uncertainty of a potentially difficult case. *See id.* at 255-56; *see In re Red Hat*, 2010 U.S. Dist. LEXIS 68619, at *9 ("The first three factors relate to the [p]laintiffs' consideration of the strengths and weaknesses of their case.").

These factors undoubtedly weigh in favor of the Settlement. In the merger context, corporate directors have a duty to exercise informed business judgment. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, 501 A.2d 1239, 1247 (Del. Ch. 1985) ("Directors faced with the decision to accept or reject a merger agreement must exercise informed business judgment.").[5] Moreover, directors are required to "'disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)). At the time the complaints were originally filed, Plaintiff argued that StellarOne's directors breached their fiduciary duties to the public shareholders by agreeing to the terms of the

[5] Plaintiff cites Delaware law as it serves as a sound basis when there is no applicable precedent under Fourth Circuit case law concerning shareholder claims relating to merger challenges that are predicated upon a resolution of complex corporate issues. *See, e.g., Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. RDB-05-841, 2005 U.S. Dist. LEXIS 26837, at *11 (D. Md. Nov. 3, 2005).

Proposed Transaction, namely the Merger vote scheduled for January 1, 2014 at an unfair price, without implementing an honest and fair sales process, while also failing to disclose all material information concerning the Merger. *See, e.g., Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 43 (Del. 1994) (when a company is up for sale, directors are obligated "to seek the transaction offering the best value reasonably available to stockholders"). However, as a result of further investigation and limited discovery prior to entering into the MOU, and additional discovery in the form of expert depositions taken before entering the Stipulation, Plaintiff and her counsel concluded that, except for the disclosure claims (which have been subsequently resolved, as discussed above), Plaintiff's chances of success were too remote to warrant further litigation.

**a. Disclosure Claims**

Where there are material deficiencies in disclosure documents seeking shareholder approval, courts have held that the preferred remedy is disclosure before the merger. *See, e.g., Gilmartin v. Adobe Res. Corp.*, No. 12467, 1992 Del. Ch. LEXIS 80, at *43 (Del. Ch. April 6, 1992) (granting plaintiff's motion for a preliminary injunction and holding "[t]he right to cast an informed vote is specific, and its proper vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages"); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("our cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected. An injunctive remedy of that nature specifically vindicates the stockholder right at issue – the right to receive fair disclosure of the material facts necessary to cast a fully informed vote – in a manner that later monetary damages cannot and is therefore the preferred remedy, where practicable.").

Here, the shareholders received previously undisclosed information that was not included

in Defendant's first Registration Statement. It was not until after the initial complaint was filed that StellarOne issued the Supplemental Disclosures in a joint proxy statement on October 22, 2013. This timely action on the part of the Faruqi Firm regarding the Supplemental Disclosures ensured that the StellarOne shareholders received this information in order to make an informed vote regarding the Proposed Transaction.

By giving StellarOne's shareholders the opportunity to consider the Supplemental Disclosures, the Settlement provided the Class with a significant benefit. *See In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007) (noting the Court's preference for supplemental disclosure that provide shareholders with full information in advance of the vote because such a remedy "gives stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest"); *see also In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998) ("Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform stockholders' decision making process.").

For the foregoing reasons, Plaintiff respectfully submits that the Settlement is "adequate" under the first three *Jiffy Lube* factors.

**2. There Are No Solvency Issues**

There is no basis for Plaintiff's Counsel to assert that the Defendants cannot afford to pay some amount of damages.

### 3. The Lack of Opposition to the Settlement

The final *Jiffy Lube* "adequacy" factor looks to the reaction of the class to the proposed settlement and "[t]he attitude of the members of the [c]lass, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court." *In re Mills*, 265 F.R.D. at 257 (internal quotation marks omitted).

Pursuant to the Preliminary Approval Order, Defendants mailed the notice of the Settlement to the proposed Class. The notice was deemed fair and reasonable, constituted the best notice practicable, and fully satisfied the requirements of due process and applicable law. To date, there have been no objections to any aspect of the Settlement. A lack of objections is generally indicative of the shareholder approval of a proposed class settlement. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal quotation marks omitted). This lack of objections to the Settlement by the proposed Class members should be taken into account and construed favorably by the Court.

This implicit support from the members of the Class is deserving of substantial weight by the Court. *See, e.g.*, *In re Mills*, 265 F.R.D. at 257-258 (finding "a great deal of confidence in the settlements adequacy" after notices were mailed to over 128,000 potential class members, and not a single putative class member objected); *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *16-17 ("No class member has objected to the proposed settlement, and only three have opted out… The lack of objections and opt-out requests are important factors contributing to a conclusion that the settlement is fair and reasonable."); *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 905-906 (E.D. Va. 2001) ("[I]t is quite significant here … no class member filed an objection… Because 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy,' the lack here of any objections …

strongly compel a finding of adequacy."); *Microstrategy*, 148 F. Supp. 2d at 668; *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("[T]he class response supports settlement -- not a single class member has objected to the Settlement Agreement and only a small number have opted-out.").

Based on the foregoing, Plaintiff's Counsel respectfully submits that the Settlement is not only fair, but also adequate under the *Jiffy Lube* factors, and therefore this court should find the Settlement fair, reasonable, and adequate in accordance with Rule 23(e).

## III. PROPOSED LEAD COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED

For prosecuting this Action on a fully contingent basis and obtaining substantial benefits for the Class, Plaintiff's counsel seeks an award of attorneys' fees and expenses in the amount of $325,000. Defendants do not oppose this request. As discussed below, the Fee and Expense Award is fair and reasonable in light of the very substantial benefits Plaintiff's Counsel achieved for the Class through the Settlement.

### A. The Requested Fee is Reasonable Under the Lodestar Analysis

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method is the appropriate method for calculating fees. *See Teague v. Bakker*, 213 F. Supp. 2d 571, 582 (W.D.N.C. 2002) ("The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.") (internal quotation marks omitted); *see also Rucker v. McNair*, No. 5:95-CV-1054-BO(2), 1997 U.S. Dist. LEXIS 22036, at *9-10 (E.D.N.C. Dec. 7, 1997) (applying the lodestar method of calculation in a "common benefit" case). In calculating an award of attorney's fees, a court must first determine

a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-244 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Reasonableness is the key in the analysis, and the Fourth Circuit has adopted twelve factors to guide the Court in determining what are "reasonable" hours and rates:

> (1) time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See Robinson*, 560 F.3d at 243-244 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226, n.28 (4th Cir. 1978) (where the court adopted the factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Application of the *Johnson* factors confirms the reasonableness of the requested Fee and Expense Award.

#### 1. The Time and Labor Expended, Awards in Similar Cases, and Customary Fee For Similar Work

Plaintiff's counsel have expended substantial time and resources to diligently prosecute this Action. Specifically, the lodestar of Plaintiff's Counsel is broken down as follows:

| FIRM | TOTAL HOURS | EXPENSES | LODESTAR | LODESTAR AND EXPENSES |
|---|---|---|---|---|
| Faruqi & Faruqi, LLP | **424.75** | **$15,183.84** | **$228,630.00** | **$243,813.84** |
| Finkelstein Thompson LLP | **44.9** | **$423.08** | **$17,563.50** | **$17,986.58** |
| **TOTAL:** | **469.65** | **$15,606.92** | **$246,193.50** | **$261,800.42** |

In calculating the lodestar amount, Plaintiff's Counsel have applied their current hourly rates, which numerous courts have recognized is appropriate. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (in lodestar analysis, "[f]ull compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor"). Plaintiff's Counsel's hourly rates are also reasonable in its industry. According to a recent analysis by TyMetrix Legal Analytics and CEB, during 2012, partners in New York City had the highest average billing rate, approximately $753 per hour.[6]

In this case, after deducting total expenses of $15,606.92, the Fee and Expense Award requested is approximately 1.25 times Plaintiffs' Counsel's overall lodestar. In addition, the total Fee and Expense Award requested represents an average hourly rate of approximately $524.21 per hour based on the lodestar figures above.[7] These amounts are comparable to, or below, those

---

[6] Debra C. Weiss, *Average Hourly Billing Rate for Partners Last Year was $727 in the Largest Law Firms*, ABA Journal (July 15, 2013), *available at* http://www.abajournal.com/news/article/average_hourly_billing_rate_for_partners_last_year_was_727_in_largest_law_f/.

[7] The lodestar and expense details for Proposed Lead Counsel are provided in Exhibit D to the Monteverde Declaration ("Declaration of Juan E. Monteverde Filed on Behalf of Plaintiff Crescente in Support of Award of Attorneys' Fees and Expenses"). Also attached to the Monteverde Declaration as Exhibit E respectively, are the lodestar and expenses for Finkelstein Thompson LLP ("Declaration of Eugene J. Benick Filed on Behalf of Plaintiff Crescente in Support of Award of Attorneys' Fees and Expenses").

awarded in other cases, and are reasonable, especially given the substantial and multiple benefits provided to the Class, which produced substantial Supplemental Disclosures.[8] *See, e.g.*, *Jolly Roger Fund*, 2005 U.S. Dist. LEXIS 26837, at *11 ("Accordingly, this Court's analysis must be guided by Maryland law, but will make reference to Delaware law in the absence of applicable Maryland law."). *Compare Globis Capital Partners v. Safenet*, No. 2772-VCS, 2007 Del. Ch. LEXIS 237, at *8 (Del. Ch. Dec. 20, 2007) (awarding fees of $1,500 per hour, for a total award of $1.2 million, in a disclosure-only settlement); *Franklin Balance Sheet Inv. Fund v. Crowley*, No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *46 (Del. Ch. Aug. 30, 2007) ($4.2 million fee represented an hourly rate of $4,023 per hour); *In re NCS Healthcare, Inc. S'holders Litig.*, No. 19786, 2003 Del. Ch. LEXIS 56, at *12 (Del. Ch. May 28, 2003) ($10 million fee represented an hourly rate of approximately $3,030 per hour); *Dragon v. Perelman*, C.A. No. 15101 (Del. Ch. Aug. 29, 1997) Tr. at 48, 51 ($3,000,000 fee represented an hourly rate of approximately $3,500); *In re Digex, Inc. S'holder Litig.*, No. 18336 (Del. Ch. Apr. 6, 2001) Tr. at 141-47 (lodestar of $1.4 million awarded fee of $12.3 million, representing lodestar multiplier of 9); *In re Lin Broadcasting Corp. S'holders Litig.*, No. 14039, 1995 Del. Ch. LEXIS 167, at *5 (Del. Ch. Sept. 15, 1995) ($9 million fee represented an hourly rate of more than $3,800); *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, No. 2635 (Del. Ch. June 8, 2007) (order approving fees of $20 million representing a lodestar multiplier of 6.5) (*see* Monteverde Decl., Ex. F) (Order and Final Judgment).

While every case is unique and must be judged on its own merits, the requested $325,000 Fee and Expense Award is well within the range of similar merger or "deal" cases where the

---

[8] As stated also at *supra* at n.4, Plaintiff cites Delaware law as it supplies a sound basis when there is a paucity or absence of relevant precedent, such as under Fourth Circuit case law, concerning shareholder claims relating to merger challenges.

settlement consisted mainly, if not solely, of supplemental disclosures in company filings. Other recent fee awards in Delaware support the agreed-upon Fee and Expense Award requested here. *See County of New York Employees Retirement Plan v. Merrill Lynch*, C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009) ($950,000 for disclosure-only settlement) (*see* Monteverde Decl., Ex. G) (Order and Final Judgment); *Henkel v. Battista*, No. 3419-VCN, 2008 Del. Ch. LEXIS 292, at *8 (Del. Ch. Dec. 16, 2008) (awarding $1.1 million in fees and expenses for additional disclosures); *In re The Trizetto Group, Inc. S'holders Litig.*, No. 3694-VCN (Del. Ch. Dec. 4, 2008) ($950,000 for disclosures and proportional voting provision agreement) (*see* Monteverde Decl., Ex. H) (Final Order and Judgment); *Virgin Islands Gov't Employees' Ret. Sys. v. Alvarez*, No. 3976-VCS, 2008 Del. Ch. LEXIS 291, at *4 (Del. Ch. Dec. 2, 2008) ($1.25 million for disclosure-only settlement); *In re Staples, Inc. S'holders Litig*, Cons. No. 18784 (Del. Ch. Aug. 16, 2001) ($2.75 million for disclosure-only settlement).

**2. The Novelty and Difficulty of Questions Raised By the Litigation**

This Action involves complex factual and legal issues. As stated above, well before a settlement was effected between the Parties, Plaintiff's Counsel, assisted by their financial experts, conducted extensive factual investigation. Plaintiff's Counsel also conducted an extensive review of StellarOne's SEC filings and nonpublic financial information, as well as other public statements made by StellarOne and the Individual Defendants, together with news and analyst reports. As a result of the speed of merger deals - a feature that is intrinsic to such transactions – Plaintiff's Counsel was required to complete all of the investigations of a legal, factual and financial nature in an extremely condensed time frame.

In addition to the voluminous factual record researched, reviewed and analyzed by Plaintiff's Counsel, counsel also researched, reviewed and analyzed the legal issues presented by the merger-related claims and the Individual Defendants' potential defenses, their fiduciary

duties owed to StellarOne's public shareholders under Delaware law in the merger context. All of this review was necessary to assess the scope for continuing litigation. After a thorough review, Plaintiffs' counsel concluded that there was minimal potential for obtaining additional remedies and damages once the required supplemental disclosures were made by StellarOne. Accordingly, based on their investigation, discovery efforts and analysis of applicable legal principles, Plaintiff's Counsel concluded that the Supplemental Disclosures provided ample consideration for the parties to settle and release the claims in this Action, and provided an excellent result given the litigation risk in such complex merger-related litigation.

**3. The Skill Required to Perform the Legal Services**

It took considerable skill to achieve the Settlement. To successfully pursue the Action, Plaintiff's Counsel had to possess expertise in Delaware state law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and analyze facts giving rise to Plaintiffs' claims from voluminous documents. Plaintiff's Counsel assembled a team that possessed the necessary expertise. These combined talents allowed counsel to plead claims and theories of liability to pursue the Action, obtain the information they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of StellarOne shareholders. Plaintiff's Counsel's skill and expertise informed shareholders of previously undisclosed material information all of which permitted StellarOne's shareholders to properly exercise their investment discretion.

**4. The Opportunity Costs Due to Acceptance of the Case**

There can be no doubt at all that Plaintiff's Counsel was precluded from other employment due to this litigation. As set forth above, Plaintiff's Counsel collectively expended approximately 469.65 hours litigating this matter, which time could have been spent on other matters involving less or no risk.

#### 5. The Attorney's Expectation at the Out-Set of the Litigation and the "Undesirability" of the Action

Even though Plaintiffs believed their claims were supported by both fact and law at the outset of the litigation, there was substantial risk that Plaintiffs would not prevail, and that Plaintiffs' counsel – who accepted this case on a ***contingent fee basis*** – would not recover their expenses or the value of their time. Courts recognize that where, as here, counsel's compensation is contingent on recovery, a premium over counsel's hourly rate may be appropriate. *See Chrysler Corp. v. Dann,* 223 A.2d 384, 389 (Del. 1966); *Seinfeld v. Coker*, 847 A.2d 330, 333-334 (Del. Ch. 2000); *Franklin Balance*, 2007 Del. Ch. LEXIS 133, at *38-39 ("Fee awards should encourage future meritorious lawsuits by compensating the plaintiffs' attorneys for their lost opportunity cost (typically their hourly rate), the risks associated with the litigation, and premium.") (footnotes omitted); *In re Vitalink Commc'ns Corp. S'holders Litig*., No. 12085, 1991 Del. Ch. LEXIS 195, at *51 (Del. Ch. Nov. 8, 1991) ("[i]n all fairness, the contingent nature of [counsel's] fee agreement demands a higher fee for [counsel's] work"); *In re Plains Res. Inc. S'holders Litig*., No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[T]he plaintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

In *Globis Capital Partners v. Safenet*, No. 2772-VCS (Del. Ch. Dec. 20, 2007) (*see* Monteverde Decl., Ex. I) (Tr. of Settlement Hearing), the court awarded a fee of $1.2 million, which equated to approximately $1,500 per hour, in a disclosure-only settlement, reasoning: "you need to reward people who took real risk and hit a home run … [W]hen you look at this particular situation, it's clear that the plaintiffs really did achieve substantial disclosure." Tr. at 34, 49. Here, as supported also by the above cases, Plaintiffs' counsel undertook a high-risk

representation on a completely contingent basis, facing the possibility of recovering nothing for their efforts.

**6. Time Limitation Imposed by Client or Circumstances**

Plaintiff's Counsel submits that the prompt settlement of the Action with excellent Supplemental Disclosures clearly benefits the StellarOne shareholders. With the Merger vote scheduled for January 1, 2014 to be followed by the consummation of the Merger certain to follow, Plaintiff's Counsel was under tremendous pressure to ensure all StellarOne shareholders were equipped with all material information necessary to make a fully informed decision. This accelerated process is unique to the merger-related litigation context, and Plaintiff's Counsel respectfully submits that the Settlement provided an excellent result given the extreme time pressures.

**7. The Results Obtained**

The Settlement, while "nonpecuniary" in nature, facilitated communication and informed StellarOne shareholders of previously undisclosed material information permitting StellarOne shareholders to exercise their financial discretion in an informed manner. Plaintiff's Counsel's efforts resulted in securing significant, material disclosures for Class members concerning the Merger. Without the benefits of these disclosures, Plaintiff's Counsel believes that the StellarOne's common stockholders would have been compelled to vote on an uninformed basis, or retain their shares and risk losing a potentially beneficial opportunity.

Under the "common benefit" doctrine, an award of fees is permitted to a successful plaintiff whose action results in a substantial benefit to others, regardless of the nature of the benefit. *Rucker*, 1997 U.S. Dist. LEXIS 22036, at *9-10 (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)). In common benefit cases, "a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees." *Tandycrafts, Inc. v. Initio*

*Partners*, 562 A.2d 1162, 1165 (Del. 1989); *In re The Topps Co. S'holders Litig.*, 924 A.2d 951, 962 (Del. Ch. 2007) ("Nor can stockholder-plaintiffs believe that their lawyers will not receive appropriate remuneration in this court for achieving an important benefit for the corporation or a class of stockholders."). Even where no common fund is created, Delaware courts acknowledge that attorneys' fees can be based on results that provide real and tangible – even if difficult to quantify – benefits to shareholders. Indeed, a non-quantifiable recovery can – and should – be the sole basis for the Fee and Expense Award. *Ryan v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *41 (Del. Ch. Jan. 2, 2009).[9]

In *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, the Second Circuit agreed with the district court's identification of "the facilitation of communication among shareholders and between shareholders and management as a ***substantial*** interest that was vindicated by plaintiffs' action." 54 F.3d 69, 72 (2d Cir. 1995) (emphasis added) ("In order to exercise the right of corporate suffrage, shareholders must be informed of important issues confronting the corporation."). "Accordingly, we hold that the promotion of corporate suffrage regarding a significant policy issue confers a ***substantial*** benefit regardless of the percentage of votes cast for or against the proposal at issue." *Id.* at 71-72 (emphasis added).

In this case, the Settlement disclosed the Supplemental Disclosures to shareholders prior to a vote on the Proposed Transaction, which offered material information allowing the shareholders to make a fully informed decision regarding whether to vote or not during the January 1, 2014 Merger vote. In this context, the Delaware Chancery Court explained in *In re*

---

[9] When significant benefits follow the filing of the meritorious lawsuit, it is presumed that the lawsuit and counsel's services in prosecuting the case contributed to that benefit. *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 290 (Del. 2002). Here, as Defendants acknowledge, there is no serious question that Plaintiffs' litigation efforts caused StellarOne to file the Supplemental Disclosures to fully inform the StellarOne shareholders on all material information surrounding the Proposed Transaction.

*Netsmart*:

> Faced with the question of whether to accept cash now in exchange for forsaking an interest in Netsmart's future cash flows, Netsmart stockholders would obviously find it important to know what management and the company's financial advisor's best estimate of those future cash flows would be … Indeed, projections of this sort are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or (as already discussed) market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects.

924 A.2d at 203. Without such information, StellarOne's shareholders would have been unable to make an informed decision regarding their vote. *See, e.g.*, *In re Emerging Commc'ns, Inc. S'holder Litig.*, No. 16415, 2004 Del. Ch. LEXIS 70, at *134 (Del. Ch. May 3, 2004) (finding projections "highly material" because knowledge of the projections "would have enabled the shareholders to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company."). Thus, the Supplemental Disclosures provided highly material information to StellarOne's shareholders, enabling them to make a fully informed decision regarding their vote. The Settlement, therefore, while "nonpecuniary" in nature, provided a substantial benefit to the Class.

**8. The Experience, Reputation and Ability of the Attorneys**

Plaintiff's Counsel submits that it has extensive experience in the field of shareholder and other complex litigation and that they are highly regarded in this area of expertise. The Plaintiff's Counsel's qualifications are set forth in the firm resumes, attached to the Monteverde Declaration as Exhibits B and C, and discussed above. *See* Argument *supra* § I.C.4.

The quality of opposing counsel is also relevant in assessing the quality of Plaintiff's Counsel's work. *See, e.g.*, *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976) (attorneys' fees justified where "plaintiffs [were] doing battle against several of the country's finest law firms."). Here, Defendants were represented by prestigious, experienced and highly

capable law firms with a national reputation for vigorous advocacy in the defense of complex shareholder class and derivative cases. The quality of the Defendants' counsels' efforts here was evident throughout the pendency of the Action. Despite these challenging factors, Plaintiff's Counsel has nonetheless obtained an excellent result for the StellarOne shareholders. Furthermore, Defendants' sophisticated and experienced counsel were certainly motivated to negotiate an attorney fee provision that was fair and in the best interests of their clients. Under these circumstances, the fact that they have agreed "not to oppose" the Fee and Expense Award, is a testamentary to its fairness, and thus, should be approved by the Court**.**

**9. The Length of the Professional Relationship With The Client**

Plaintiff was a shareholder of StellarOne, and the beneficial client in this case upon whom all benefits would flow is the entire Class of outstanding shareholders of StellarOne common stock. The Faruqi Firm has a long history of representing shareholders in class action litigation of this sort and has developed a reputation for aggressively, efficiently and successfully prosecuting such actions on behalf of shareholders. *See* Firm resume attached as Exhibit B to Monteverde Decl.

In determining how shareholders have reacted to an attorney fee request, courts routinely consider both the number and quality of objections to the request. Here there are simply no shareholder objections to the proposed Settlement, Fee and Expense Award, although all shareholders have been given notice of and the opportunity to comment on these matters as part of the putative Settlement. *See* Stipulation, Ex. 3, ¶ IX. Consequently, and in no small measure due to the substantial benefit Plaintiff's Counsel has garnered for StellarOne shareholders, the Class has deemed the Fee and Expense Award reasonable.

In sum, counsel respectfully submits that the request for the Fee and Expense Award of $325,000 is reasonable and should be approved by this Court under the *Johnson* lodestar

analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement, certify the Class, and award the requested Fee and Expense Award.

Dated: April 14, 2014

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

/s Eugene J. Benick
Eugene J. Benick, Esq. (VSB# 76495)
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090
ebenick@finkelsteinthompson.com

*Counsel for Plaintiff and Proposed Liaison Counsel*

**FARUQI & FARUQI, LLP**
Juan E. Monteverde, Esq. (admitted *pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
jmonteverde@faruqilaw.com

*Counsel for Plaintiff and Proposed Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 14th day of April, 2014, the foregoing Memorandum of Law was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s Eugene J. Benick

**FINKELSTEIN THOMPSON LLP**
Eugene J. Benick, Esq. (VSB# 76495)
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090
ebenick@finkelsteinthompson.com

*Counsel for Plaintiff and Proposed Liaison Counsel*